09-90051-am
In re Andre Sobolevsky

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of July, two thousand eleven.

PRESENT:

José A. Cabranes,
Robert D. Sack,
Richard C. Wesley,

*Circuit Judges.*

_____

|  |  |
|---|---|
| In re Andre Sobolevsky, | 09-90051-am |
| Attorney. | **ORDER OF GRIEVANCE PANEL** |

_____

| For Andre Sobolevsky: | Andre Sobolevsky, Esq., New York, New York. |
|---|---|

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and Andre Sobolevsky is PUBLICLY REPRIMANDED and SUSPENDED from practice before this Court for a period of at least two years, based on the misconduct

described in the Committee's report.

## I.    Summary of Proceedings

By order filed in May 2009, this Court referred Sobolevsky to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. After Sobolevsky responded in writing to the May 2009 order, he waived his right to a hearing before the Committee. In October 2010, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Sobolevsky with a copy of the Committee's report, and Sobolevsky responded.

In its report, the Committee concluded that Sobolevsky had engaged in a pattern of willful neglect of his responsibilities to his clients and the Court, and that there was a strong possibility that his misconduct would continue in the absence of discipline. Report at 9. Specifically, the Committee found that Sobolevsky had: (1) filed in this Court appellate briefs of "shockingly poor quality," *id.* at 4; (2) failed to supervise non-lawyer staff, and aided in the unauthorized practice of law, *id.* at 5; (3) failed to comply with this Court's scheduling orders and neglected client matters, even after he was on notice of the present proceeding, *id.* at 6-8; (4) filed petitions for review in this Court despite venue lying in other circuits, *id.* at 8; and (4) made a number of misstatements in these proceedings, raising serious doubts as to

2

whether he has been fully candid and cooperative in this proceeding, *id.* at 9. After finding significant aggravating and limited mitigating factors, *id.* at 5-8, the Committee recommended that Sobolevsky be suspended for a period of at least two years, and that the suspension not end unless Sobolevsky demonstrates that he is fit to resume the practice of law, *id.* at 9.

In his response to the Committee's report, Sobolevsky stated, *inter alia*, that: (1) his misconduct had occurred at a time when he was experiencing "a surge of immigration petitions" and this Court was changing its processing of immigration appeals; (2) the Committee had "failed to take into account [his] prior good work with the Court"; (3) he had had no intention of misleading the Committee or Court; and (4) no client was actually prejudiced by his misconduct. However, Sobolevsky did not address a number of the Committee's findings, including those concerning his filing of deficient briefs, his failure to supervise non-lawyer staff, and his aiding in the unauthorized practice of law.

**II. Discussion**

We concur with all of the Committee's findings, but are particularly disturbed by Sobolevsky's extremely poor briefing in the cases examined by the Committee, his inaccurate statements about those cases in the present proceeding despite being well aware that they were of central importance to the proceeding, his filing of pleadings drafted by non-lawyers, and his failure to respond to important findings in the Committee's report. Those matters, by

3

themselves, would warrant a two year suspension.

We reject all of Sobolevsky's challenges to the Committee's report, and find that the Committee properly addressed the matters discussed in his response. Regarding the Committee's alleged failure to take into account his "prior good work," Sobolevsky does not now identify that prior work, but we assume that he is referring to his statements in his June 2009 response to our May 2009 order that: (a) he had obtained a remand to the agency in *Sulaymanov v. USCIS*, 04-5208-ag, June 2009 Response at 2; (b) "on at least three occasions [he had] achieved the positive and concrete result of getting the petition granted[,] positively impacting a number of families in their hard[-]sought quest for adjusting status to that of a permanent resident," although he did not further identify those cases,[1] *id.* at 3; (c) he had "submitted a good brief" in *Razzakova v. Bureau of Citizenship & Immigration Services*, 03-40641-ag, *id.*; and (d) his work in *Chion Yin Kong v. Holder*, 08-5277-ag, "shows a much improved writing, [and] timely and complete submissions," *id.* at 4. However, even if we accept Sobolevsky's characterization of his work in those cases, he does not explain what weight it should have been given by the Committee, or why the Committee should have known that he wished it to be treated as a mitigating factor.

---

[1] For purposes of this order, we liberally construe Sobolevsky's June 2009 response in his favor and assume that the three unnamed cases do not include *Sulaymanov*, *Razzakova*, or *Chion Yin Kong* – *i.e.*, that he obtained favorable results and/or wrote good briefs in six different cases.

4

Nonetheless, even if we assume that Sobolevsky had properly requested that the Committee treat his "prior good work" as a mitigating factor, we find that the Committee did not err in that regard. Evidence of competent legal representation is relevant to the disciplinary charges against Sobolevsky, and the Committee did note that Sobolevsky had won a remand in *Sulaymanov*. *See* Report at 7. In any event, Sobolevsky's ability to competently discharge his obligations in six cases is not a significant mitigating factor when weighed against the misconduct described in the Committee's report. Whether or not the Committee considered Sobolevsky's performance in those six cases, the discipline recommended by the Committee remains appropriate.

**III. Conclusions**

Upon due consideration of the Committee's report, the underlying record, and Sobolevsky's submissions, it is hereby ORDERED that Sobolevsky is PUBLICLY REPRIMANDED and SUSPENDED from practice before this Court for a period of two years, based on the misconduct described in the Committee's report.

It is further ORDERED as follows:

(a) The suspension period will terminate only upon a showing by Sobolevsky that he is fit to resume the practice of law. The minimal requirements of that showing are described on page 9 of the Committee's report. Any request for termination of the suspension must be made by motion filed under this docket number.

(b) Sobolevsky must disclose this order to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Sobolevsky also must,

5

within fourteen days of the filing of this order, file an affidavit with this Court confirming that he has complied with the requirements set forth in this paragraph.

The text of this panel's May 2009 order and the Committee's report are appended to, and deemed part of, the present order for purposes of disclosure of this order by Sobolevsky and the Clerk of Court. The Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Sobolevsky, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[2]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



By:  Michael Zachary
      Counsel to the Grievance Panel

---

[2] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities. While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

## Text of May 2009 Order

For the reasons that follow, Andre Sobolevsky is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Sobolevsky has been referred to this panel on seven separate occasions since October 2008 because of the poor quality of his briefing. *See Bao Hua Xiao v. Mukasey,* No. 08-1244-ag, order filed Oct. 6, 2008; *Li Fang Liu v. Mukasey,* No. 08-1310-ag, order filed Oct. 17, 2008; *Chun Qu Zhang v. Mukasey,* No. 08-0585-ag, order filed Oct. 20, 2008; *Qi Lin Zheng v. Mukasey,* No. 08-1412-ag, order filed Oct. 28, 2008; *Chang Xin Lin v. U.S. Att'y Gen'l,* No. 07-5762-ag, order filed Dec. 5, 2008; *Zhong Sheng Guo v. Mukasey,* No. 08-1234-ag, order filed Dec. 19, 2008; *Gui Xing Wang v. Mukasey,* No. 08-1701-ag, order filed Jan. 6, 2009. The panels deciding those cases noted the following:

1. In *Bao Hua Xiao,* the panel found that Sobolevsky's brief was "of such poor quality that it waive[d] any challenge to the [Board of Immigration Appeals ("BIA")] decision under review." *See Bao Hua Xiao,* No. 08-1244-ag, order filed Oct. 6, 2008. The panel also noted that, among other things, the brief: referred to the petitioner by the wrong name; repeatedly indicated that the petition for review challenged the BIA's affirmance of a decision of an immigration judge ("IJ") when it actually challenged the BIA's denial of a motion to reopen; referred to the submission of evidence that had never been submitted; and argued that the IJ had failed to consider evidence of widespread torture of members of house churches even though the petitioner had not applied for relief under the Convention Against Torture and had never claimed to be a member of a house church. *See id.*

2. In *Li Fang Liu*, the panel stated that Sobolevsky's brief -- described as being "of extremely poor quality" -- purported to challenge an adverse credibility determination, although no such determination had ever been made by the agency; argued the merits of an asylum claim, although the petitioner had been ordered removed *in absentia* and the petition arose from the denial of a

7

motion to reopen; and contained boilerplate language that was wholly irrelevant to the petitioner's case. *See Li Fang Liu,* No. 08-1310-ag, order filed Oct. 17, 2008.

3. In *Chun Qu Zhang*, the panel found that Sobolevsky's brief: challenged the IJ's adverse credibility determination, although that determination played no part in the BIA decision under review; argued that the IJ had erred in finding that the petitioner had submitted insufficient corroborating evidence, although the IJ never made such a finding, and that the IJ had erred in relying on the petitioner's airport interview, although the IJ had made no findings regarding an airport interview and the record did not include any evidence of such an interview; and, in sum, waived any challenge to the BIA decision at issue. *See Chun Qu Zhang,* No. 08-0585-ag, order filed Oct. 20, 2008.

4. In *Qi Lin Zheng,* the Court granted the government's motion for summary affirmance of the BIA's order and dismissed the petition as lacking an arguable basis in law or fact. *See Qin Lin Zheng,* No. 08-1412-ag, order filed Oct. 28, 2008. The panel noted that Sobolevsky's brief was of poor quality and "largely discussed matters that are irrelevant and foreclosed by this Court's prior decision concerning Petitioner." *Id.*

5. In *Chang Xin Lin*, the panel found that Sobolevsky's brief: referred to evidence that was never submitted; referred to arguments that were never made before the agency; contained boilerplate that had nothing to do with the case; and contained passages that were unintelligible. *See Chang Xin Lin,* No. 07-5762-ag, order filed Dec. 5, 2008.

6. In *Zhong Sheng Guo*, the panel noted that the petition sought review of the BIA's affirmance of the IJ's denial of a motion to reopen while Sobolevsky's brief purported to challenge the agency's denial of an application for asylum. *See Zhong Sheng Guo,* No. 08-1234-ag, order filed Dec. 19, 2008. The panel was especially troubled that Sobolevsky argued that the IJ had erred in finding Guo not credible, since the IJ did not make a credibility finding and, in fact, could not have done so because Guo had been ordered removed *in absentia. See id.* Because the arguments in the brief bore little if any relation to the agency decision under review, the panel found that Guo had waived all relevant arguments. *See id.*

8

7. In *Gui Xing Wang,* the panel found that Sobolevsky's brief was of poor quality and failed to challenge the BIA's dispositive finding, that Wang had failed to exercise due diligence in pursuing his ineffective assistance claim against his prior counsel, thus waiving all relevant arguments. *See Gui Xing Wang,* No. 08-1701-ag, order filed Jan. 6, 2009.

In addition to poor briefing, Sobolevsky also has repeatedly failed to comply with scheduling orders and other directives of this Court. In 2003, Sobolevsky filed 14 petitions for review, eight of which were ultimately dismissed for failure to submit the petitioner's brief by the deadline specified in the scheduling orders. *See Volkova v. INS,* No. 03-4205-ag, order Mar. 29, 2005; *Netsajeva v. INS,* No. 03-4412-ag, order filed Sept. 22, 2005 (appeal later reinstated by new counsel); *Netsajev v. INS,* No. 03-4449-ag, order filed May 4, 2006 (same); *Shahvorostov v. INS,* No. 03-4450-ag, order filed May 4, 2006 (same); *Pavlyshak v. INS,* No. 03-4821-ag, order filed April 1, 2005; *Otarbayev v. BCIS,* No. 03-40202-ag, order filed Jan. 27, 2006; *Kourmei v. BCIS,* No. 03-40828-ag, order filed Oct. 17, 2005; *Gretchanina v. INS,* No. 03-41241-ag, order filed Jan. 31, 2006.

In 2004, Sobolevsky filed seven petitions for review, two of which were dismissed for failure to comply with the Court's scheduling orders. *See Tikhonova v. INS,* No. 04-1496-ag, order filed Sept. 30, 2005; *Sulaymanov v. USCIS,* No. 04-5208-ag, order filed Mar. 9, 2006 (later reinstated). The Court dismissed a third petition for review for lack of jurisdiction because the petition itself was not timely filed. *See Ahmetova v. BCIS,* No. 04-0994-ag, order filed Dec. 8, 2004.

In 2005, Sobolevsky filed nine petitions for review, seven of which were dismissed for failure to comply with scheduling orders. *See Juknevicius v. USCIS,* No. 05-2011-ag, order filed Dec. 21, 2005; *Skiblitskaia v. USCIS,* No. 05-2016-ag, order filed Mar. 10, 2006; *Zubar v. USCIS,* No. 05-3129-ag, order filed May 17, 2006; *Zubar v. USCIS,* No. 05-3133-ag, order filed May 17, 2006; *Zubar v. USCIS,* No. 05-3134-ag, order filed May 17, 2006; *Zubar v. USCIS,* No. 05-3138-ag, order filed May 17, 2006; *Papikyan v. USCIS,* No. 05-4775-ag, order filed Jan. 23, 2006. An eighth petition was dismissed for failure to file Form C/A. *See Tsiklauri v. USCIS,* No. 05-5671-ag, order filed Mar. 31, 2006.

Sobolevsky filed 34 petitions for review in 2008. In ten of those cases, this Court ordered Sobolevsky to show cause why the petition should not be dismissed for failure to file his brief by the deadline specified in the scheduling order. *See Dong Huang v. Mukasey,* No. 08-0071-ag, order filed May 23, 2008; *Ying Xiu*

*Gao v. Mukasey,* No. 08-1073-ag, order filed July 31, 2008; *Shun Xing Lin v. Mukasey,* No. 08-1233-ag, order filed July 15, 2008; *Sheng Zhong Guo v. Mukasey,* No. 08-1234-ag, order filed July 17, 2008; *Yi Shu Li v. Mukasey,* No. 08-2171-ag, order filed Oct. 24, 2008; *Wei Jiang v. Mukasey,* No. 08-2413-ag, order filed Aug. 18, 2008; *Jing Jing Ou v. Mukasey,* No. 08-2896-ag, order filed Oct. 31, 2008; *Fang Zian Guan v. Mukasey,* No. 08-3156-ag, order filed Nov. 3, 2008; *Bao Hua Wang v. Mukasey,* No. 08-3808-ag, order filed Dec. 17, 2008; *Chun Ke Zhen v. Mukasey,* No. 08-6031-ag, order filed Apr. 6, 2009. In seven of the cases in which an order to show cause was issued, Sobolevsky failed to respond to the order, and the petition was dismissed for failure to comply with the scheduling order. *See Dong Huang,* No. 08-0071-ag, order filed June 9, 2008; *Ying Xiu Gao,* No. 08-1073-ag, order filed Aug. 22, 2008 ; *Yi Shu Li,* No. 08-2171-ag, order filed Nov. 14, 2008; *Wei Jiang,* No. 08-2413-ag, order filed Oct. 16, 2008; *Jing Jing Ou,* No. 08-2896-ag, order filed Dec. 24, 2008; *Fang Zian Guan,* No. 08-3156-ag, order filed Nov. 20, 2008; *Chun Ke Zhen,* 08-6031-ag, order filed Apr. 27, 2009. Sobolevsky also submitted at least two defective briefs and appendices in 2008. *See Chen Shao He v. Mukasey,* No. 08-0915-ag, notice filed June 18, 2008 (proof of service and special appendix missing; insufficient number of copies; cover and other portions of brief defective; unacceptable font; untimely filing); *Yan Qin Chen v. Mukasey,* No. 08-1702-ag, entry dated June 26, 2008 (incorrect docket number and font; missing virus certification form and PDF versions of brief and appendix); *see also Chen Shao He,* No. 08-0915-ag, entry dated Feb. 23, 2009 (noting discussion with Sobolevsky about lack of response to February 2, 2009 order, failure to keep address current, and intention to respond that day, which did not occur).

Finally, Sobolevsky has improperly filed eight petitions for review in this Circuit, although the Board of Immigration Appeals orders challenged by those petitions clearly showed that the immigration proceedings had been completed in other Circuits. *See* cases docketed under Nos. 08-1074-ag (transferred to First Circuit); 08-1230-ag (same, Third Circuit); 08-1235-ag (same); 08-2169-ag (same, Sixth Circuit); 08-5207-ag (same, Fifth Circuit); 08-5385-ag (same, Eleventh Circuit); 08-6025-ag (same, Seventh Circuit); 08-6027-ag (same, Third Circuit); *see also* Immigration and Naturalization Act § 242(b)(2), 8 U.S.C. § 1252(b)(2) (petition for review "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings").

Thus far, Sobolevsky has filed only one petition for review in 2009. His brief in that case is due by June 1, 2009. *See Yi Ying Pan v. Holder*, No. 09-0488-ag.

10

Upon due consideration of the matters described above, it is ORDERED that Andre Sobolevsky  is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report consistent with Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

[remainder of order omitted]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
     Michael Zachary
     Supervisory Staff Attorney
     Counsel to the Grievance Panel

11

## October 2010 Report of the Committee
## on Admissions and Grievances

## REPORT & RECOMMENDATION
### Re: In re Andre Sobolevsky, # 09-90051-am

### I. Introduction

By Order dated May 26, 2009, the United States Court of Appeals for the Second Circuit ("the Court") referred Andre Sobolevsky to this Committee, for investigation of his conduct before the Court -- including "poor quality" briefing and frequent defaults on scheduling orders -- and for preparation of a report on whether he should be subject to disciplinary or other corrective measures.

The following constitutes the Committee's report and recommendation to impose discipline on Sobolevsky. The Committee recommends that Sobolevsky be suspended from practice before the Second Circuit for a period of at least two years.

### II. This Disciplinary Proceeding

The Court's May 26, 2009 order referring this matter to the Committee also ordered Sobolevsky to show cause why he should not be suspended pending the Committee's proceedings, and requested the Committee to make a preliminary recommendation as to whether such an interim suspension was appropriate. Sobolevsky responded to that order by declaration dated June 19, 2009. On August 21, 2009, the Committee issued a recommendation "conclud[ing] that no interim suspension is necessary," in light of the fact that Sobolevsky had no pending cases in the Second Circuit. The Committee simultaneously gave Sobolevsky notice of referral and an opportunity to supplement his response.

By letter dated September 18, 2009, Sobolevsky declined the opportunity to supplement

his response. On October 12, 2009, the Committee gave Sobolevsky notice of a hearing, to be held on November 10, 2009. By letter dated October 31, 2009, Sobolevsky waived his right to a hearing, and indicated that he intended to "rely on [his] previously submitted responses."

### III. Factual Background

The following facts are taken primarily from court records, and also from Sobolevsky's written submissions.[1]

Sobolevsky was admitted to the bar of the State of New York in 1985. He is also admitted to the bars of the Third Circuit and the Northern District of New York. He is in good standing with each bar. It does not appear that he has been subject to any previous discipline.

Sobolevsky is primarily an immigration practitioner. Since 2003, Sobolevsky has represented numerous asylum petitioners in the Second Circuit. Initially, his practice appears to have focused on Russian immigrants; since 2008, the majority of his clients have been Chinese.

Between 2003 and 2005, Sobolevsky filed a total of 30 petitions for asylum and/or withholding of removal in the Second Circuit. Seventeen of those petitions were dismissed for failure to comply with scheduling orders, and one was dismissed for failure to timely file the petition itself. In the following two years, Sobolevsky filed only one petition, which was not dismissed for default. In 2008, Sobolevsky filed 34 petitions. In ten of those cases, he failed to comply with scheduling orders, and was ordered to show cause why the petitions should not be dismissed. In seven of those cases, Sobolevsky failed to respond, and the petition was dismissed.

Sobolevsky filed only one case in the Second Circuit in 2009 -- *Yi Ying Pan v. Holder*, 09-0488-ag. At the time of the Court's May 26, 2009 referral order, that case was still pending, and Sobolevsky's brief was due June 1, 2009. The case was subsequently dismissed, for Sobolevsky's failure to follow the scheduling order. Sobolevsky currently has no cases pending in the Second Circuit.

In addition to Sobolevsky's numerous defaults on scheduling orders, the Court's order cites two additional sources of concern. First, Sobolevsky's briefing has been the subject of repeated criticism from the Court. In seven cases in 2008, the Court issued orders criticizing the quality of Sobolevsky's briefing. *See, e.g., Li Fang Liu*, 08-1310-ag, order filed Oct. 17, 2008, describing Sobolevsky's brief as "of extremely poor quality." Second, eight of the petitions filed by Sobolevsky in the Second Circuit in 2008 were improperly filed in that Circuit, because the immigration proceedings below had been conducted in other Circuits.

---

[1] The Committee has also reviewed the relevant records of the Departmental Disciplinary Committee for the First Judicial Department of the Appellate Division of the Supreme Court of New York, pursuant to the Court's request for sharing of information in its May 26, 2009 referral order. The Committee does not rely on those records for its findings or recommendations.

## IV.   Legal Standard

Under the Rules of this Committee,

> An attorney may be subject to discipline or other corrective
> measures for any act or omission that violates the rules of
> professional conduct or responsibility of the state or other
> jurisdiction where the attorney maintains his or her principal office,
> or the rules of professional conduct of any other state or
> jurisdiction governing the attorney's conduct. An attorney may
> also be subject to discipline or other corrective measures for any
> failure to comply with a Federal Rule of Appellate Procedure, a
> Local Rule of the Court, an order or other instruction of the Court,
> or a rule of professional conduct or responsibility of the Court, or
> any other conduct unbecoming a member of the bar.

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct
unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P.
46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to
professional standards that show[s] an unfitness to discharge continuing obligations to clients or
courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645
(1985). For "[m]ore specific guidance," we may look to "case law, applicable court rules, and
'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent
representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir.
2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of
Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609
(7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486
F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional
rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions
call for a range of sanctions from reprimand to disbarment for various forms of "lack of
diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of
New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . .
[n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(A)(3); 22 N.Y.C.R.R. §
1200.30(A)(3) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3(b) (effective Apr. 1, 2009)
(hereinafter "N.Y.R."). In addition, the Code's Ethical Canons require that the lawyer should
represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all
professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to
corrective measures must be supported by clear and convincing evidence." Rules of the

3

Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## V. The Committee's Findings

### 1 *Defective Briefing and Aiding the Unauthorized Practice of Law*

The Committee has reviewed each of the briefs cited in the court's referral order, and finds them to be generally of shockingly poor quality. They are replete with miscellaneous defects: the briefs repeatedly get the names of Sobolevsky's clients wrong, contain irrelevant boilerplate, refer to evidence that was never submitted, and in places are simply unintelligible.

Two especially serious defects recur repeatedly. First, Sobolevsky repeatedly fails to properly identify the decision being appealed from – that is, his briefs purport to challenge the merits of the underlying decision of the Immigration Judge ("IJ"), even when the decision under review is the BIA's denial of a motion to reopen. *See, e.g., Bao Hua Xiao*, 08-1244, *Gui Xing Wang*, 08-1701. Needless to say, this fundamental error had the potential to result in serious prejudice to Sobolevsky's clients; by failing to address or identify the relevant issues and standards of review, Sobolevsky potentially waived meritorious arguments.

Secondly, Sobolevsky's briefs repeatedly purport to challenge adverse credibility determinations of the IJ, regardless of whether any such determination was ever made, *see Zhong Sheng Guo*, 08-1234, *Li Fang Liu*, 08-1310, or had any relevance to the BIA decision under review, *Chun Qu Zhong*, 08-0585. In one case, Sobolevsky challenged the IJ's adverse credibility determination despite the fact that his client had been ordered removed *in absentia*. *Zhong Sheng Guo*, 08-1234. To the extent that this error caused Sobolevsky to overlook other, potentially meritorious arguments, it had the potential to prejudice his clients.

The prevalence of such basic and obvious errors raises serious questions as to whether Sobolevsky ever reviewed his clients' records, or whether he was, rather, in the habit of submitting essentially identical briefs regardless of the specific facts and postures of his clients' cases. Unsurprisingly, in his response to the Court's May 26, 2009 order, Sobolevsky concedes that he "relied on [his] paralegal assistant to write the briefs" and "filed some of them without reading them." June 19, 2009 Declaration, at 1. He explains that "since the fact pattern and legal

4

issues were nearly identical in all of my cases, I mistakenly thought that my paralegal could follow the model brief." *Id.*[2]

Sobolevsky correctly acknowledges that this is "not an excuse or [] justification." *Id.* Sobolevsky was responsible for the actions of non-lawyers acting at his direction, and for his failure to responsibly supervise them. D.R. 1-104(C), (D). In fact, Sobolevsky's conduct "constitutes an aggravating rather than mitigating factor." *In re Karen Jaffe,* 585 F.3d 118 (2d Cir. 2009). Sobolevsky's explanation that at least some of the briefs in question were drafted by non-lawyers, and filed without his review, amounts to "a clear concession that [he] aided the unauthorized practice of law, in violation of D.R. 3-101(A)" *Id.* at 123.

The Committee therefore finds that Sobolevsky's defective briefing and failure to supervise non-lawyer staff constitute sanctionable misconduct, as does Sobolevsky's aiding in the unauthorized practice of law. Sobolevsky's conduct is aggravated by his substantial experience in the practice of law, and the fact that his conduct amounts to a pattern of neglect, involving multiple instances of misconduct. ABA Standards § 9.22(a), (c), (d), (i).

The Committee has also considered certain potential mitigating factors. The Committee finds these factors insufficient to significantly mitigate Sobolevsky's conduct.

First, Sobolevsky claims that his conduct was due to the "border line glaucoma," which he developed in 2008, and which made it painful for him to read "even a few pages not to mention record on appeal." June 19, 2009 Declaration, at 1. Sobolevsky provides no evidence of this diagnosis. Assuming, however, that his claim is true, it does little to mitigate his conduct. While physical disability may be a mitigating factor, *see* ABA Standards § 9.22(h), it cannot excuse Sobolevsky's abandonment of his responsibilities. Sobolevsky appears to have taken no steps, or at least no effective steps, to ensure that his clients were adequately represented despite his physical limitations, or, if he was in fact physically unable to represent them, to make alternative arrangements.

Second, Sobolevsky acknowledges his error, states that he feels "regret," and offers "a thousand apologies." Remorse may be a mitigating factor. *See* ABA Standards § 9.32(l). However, due to Sobolevsky's reluctance to appear before the Committee, it is difficult to gauge the depth or genuineness of Sobolevsky's remorse. Moreover, despite his claims of remorse, Sobolevsky's response gives the Committee little confidence that he appreciates the significance of his conduct.

Sobolevsky states that "the fact pattern and legal issues were nearly identical in all of my cases." June 19, 2009 Declaration, at 1. He explains:

---

2       It is unclear from Sobolevsky's response whether all of the defective briefs were produced in this manner, or whether Sobolevsky personally drafted some of them. It makes no significant difference to the Committee's findings of misconduct whether the defects in the briefs were the result of Sobolevsky's inadequate supervision of non-lawyer staff, or Sobolevsky's personal negligence.

5

> I do not believe that any of the clients were prejudiced as better
> written briefs would have failed . . . the fact patterns of all my
> Chinese cases was the same: more than two US born children after
> an order of removal. Both BIA and the Court settled the legal
> issues surrounding such fact pattern.

*Id.* at 3.[3]

This is simply not true. The seven cases cited in the Court's order as defectively briefed involve a variety of different legal issues, procedural postures, and fact patterns. In fact, of the seven cases cited by the Court, *none* are dependent on a fact pattern involving US-born children, and several do not involve the one-child policy at all.[4] Sobolevsky apparently had at least four of the cited briefs in his possession when drafting his response, because he was subsequently able to provide copies of them to the Committee. *See* Sobolevsky's letter dated September 18, 2009. He does not appear to have read them. His continued inattentiveness to the particular facts of his clients' cases clearly shows that he still does not understand his responsibilities as a lawyer.

2.    *Defaults on Scheduling Orders and Neglect of Client Matters*

Sobolevsky's pattern of defaulting on scheduling orders stretches back to 2003. Between 2003 and 2005, seventeen of Sobolevsky's 30 petitions in the Second Circuit were dismissed for failure to comply with scheduling orders. In 2008, Sobolevsky failed to comply with scheduling orders in ten of 34 cases, and seven of those cases were dismissed for his failure to respond to orders to show cause.

In his response, Sobolevsky attempts to explain the circumstances of the 2003-2005 dismissals. In all but three cases, Sobolevsky claims that the petitioners abandoned their cases, or replaced him as counsel, or that their cases were "meritless." In two cases, Sobolevsky claims to be unable to recall the circumstances of his default. Finally, one of the dismissed cases,

---

3       Sobolevsky is presumably referring to the contested issue of whether the Chinese authorities subject returning Chinese nationals to forcible sterilization for violation of the one-child policy where a second child has been born outside China. The BIA has concluded that the weight of the evidence shows that China does not enforce its policies in that way, *see In re C- C-*, 23 I&N Dec. 899 (BIA, March 23, 2006), and the courts have upheld the BIA's determination. *See, e.g., Wei Guang Wang v. BIA*, 437 F.3d 270 (2d Cir. 2006), *Xiu Jin Yu v. Mukasey*, 513 F.3d 346 (3d Cir. 2008).

4       *Bao Hua Xiao*, 07-5726, was a claim based on persecution for political activism; *Qi Lin Zheng v. Mukasey*, 08-1412 was based on Falun Gong membership; and *Chung Qu Zhang v. Mukasey*, 08-0585, was based on membership in a Christian home church. In *Li Fang Liu v. Mukasey*, 08-1310, Sobolevsky's brief before the Court relies entirely on an argument regarding persecution for Falun Gong membership, although an alternative argument based on US-born children was offered before the BIA. The facts of *Gui Xing Wang v. Mukasey*, 08-1701 are unclear from Sobolevsky's brief, but from the record below appear to involve past persecution relating to China-born children. Similarly, *Chang Xin Lin*, 08-5762, involved China-born children. Finally, although Sobolevsky's brief in *Zhong Sheng Guo v. Mukasey*, 08-1234, adverts in passing (for no clear reason) to the foreign-born children issue, see Petitioner's Brief at 9, this appears to have no relation to the issues below, where the petitioner initially sought asylum on the basis of his wife's induced abortion following the birth of two children in China, and subsequently moved to reopen on the basis of his conversion to Christianity.

6

*Sulaymanov*, 04-5208, was reinstated after Sobolevsky's default, and Sobolevsky ultimately won a remand for his client. His response does not address the circumstances of the initial default.

With respect to his defaults in 2008, Sobolevsky does not appear to be able to provide specific details. He claims generally that he was overwhelmed by a "surge of clients," that he had problems receiving his mail, and that many or perhaps all of the clients whose cases were dismissed abandoned their cases. As noted above, he also claims to have suffered from "border line glaucoma." June 19 Declaration at 2-3.

Finally, Sobolevsky argues that "almost all" his clients' cases had the same fact pattern, involving US-born children, which proved to be non-meritorious, and that therefore no client was prejudiced by his default. The Committee cannot be sure whether this claim is accurate, in respect of clients whose cases were dismissed for failure to file a brief – it is hard to know what Sobolevsky might have argued, had he filed a brief. However, in light of the briefs the Committee has been able to review, Sobolevsky's claim is not persuasive, and his ability to determine whether a clients' case was meritorious or not is highly questionable.

It is possible, even so, that no client was actually prejudiced. However, to the extent that Sobolevsky put potentially meritorious claims at risk of dismissal for default, it is clear that he posed a serious risk of such prejudice. Moreover, even in the event that – as he claims – no potentially meritorious claims were affected by his conduct, his persistent failure to comply with scheduling orders, or to properly withdraw, despite numerous warnings from the Court over several years, shows a disregard for his responsibilities to the Court. *See Bennett v. Mukasey*, 525 F.3d 222, 225 (2d Cir. 2008); D.R. 2-110(A)(2); 22 N.Y.C.R.R. § 1200.15(A)(2) ("A lawyer shall not withdraw from employment [without] complying with applicable laws and rules"); *see also* N.Y.R. 1.16(e).

Sobolevsky's conduct with respect to *Yi Ying Pan v. Holder*, 09-0488, is especially troubling. Sobolevsky's brief in that case was still pending at the time of the Court's May 26, 2009 referral order. On the day it was due, June 1, 2009, Sobolevsky requested an extension of time to respond. His request was defective in several respects, including that it was by letter rather than motion, and that it used the wrong name for both the petitioner and the AUSA. The Court instructed him to correct the defective filing by June 12. *See* Notice of defective filing, dated 6/2/09. Sobolevsky failed to do so. Nor did he move to withdraw, despite having indicated his intention to file a motion to withdraw in his June 19, 2009 response to the Committee, in telephone conversations with the Court's staff on July 2, 2009, *see* Internal docket for 09-0488-ag, and in telephone conversations with the Committee's personnel.[5] On July 24, 2009, the Court issued an Order to Show Cause why the case should not be dismissed. Sobolevsky did not respond, and the case was dismissed on August 13, 2009. Sobolevsky's

---

5      This appears to be consistent with a pattern of non-responsiveness on Sobolevsky's part. *See Chen Shao He v. Mukasey*, 08-0915, internal docket entry dated 2/23/09, noting that Sobolevsky had indicated his intention to respond that day to an outstanding order to show cause, which he failed to do.

7

persistence in his failure to comply with the Court's orders, even during the pendency of this disciplinary proceeding, strongly suggests that such conduct is likely to continue in the future.

The Committee finds that Sobolevsky's conduct was "unbecoming a member of the bar," Fed. R. App. P. 46(c), and "inimical to the administration of justice," *In re Snyder*, 472 U.S. at 645, and that he neglected client matters in violation of D.R. 6-101(A)(3). Again, the Committee finds that Sobolevsky's conduct is aggravated by his substantial experience in the practice of law, and by the fact that his conduct amounts to a pattern of neglect, involving multiple instances of misconduct, over a period of several years and apparently likely to be ongoing. ABA Standards § 9.22(a), (c), (d), (i). The Committee finds no significant mitigating factors.

### 3. Improper Filing of Petitions in the Second Circuit

Finally, the Court's referral order notes that Sobolevsky has improperly filed eight petitions for review in the Second Circuit, although the immigration proceedings at issue had ben completed in other Circuits. In response, Sobolevsky claims that "these clients came to my office on the eve of the deadline . . . giving them less than 24 hours to file the petition for review" and that he filed in the Second Circuit "for a nominal fee" and "to buy the clients the additional time they needed to find another lawyer in the appropriate jurisdiction. . . . I do not do that anymore." June 19, 2009 Declaration, at 1.

Sobolevsky's explanation does not appear to be strictly accurate. For example, in *Xi Chen v. Mukasey*, 08-1230, which was improperly filed in the Second Circuit despite the fact that the immigration proceedings had been conducted in Newark, the BIA decision appealed from was dated February 26, 2008, and the petition was filed on March 14, 2008 – well within the 30-day period required by 12 USC § 1252(b)(1). Similarly, in *Arina v. Mukasey*, 08-1074, it appears that the petitioner's motion to reopen was denied on February 12, 2008, and the petition for review was filed on March 5, 2008.

In light of Sobolevsky's briefing practices, it seems probable that most or all of these petitions were filed in the wrong Circuit simply because Sobolevsky (or his paralegals) failed to read the records. Assuming that is the case, it is further evidence of Sobolevsky's neglect of his clients' cases. In this case, the error that resulted from that neglect may not have prejudiced his clients, since their cases were simply transferred to the proper jurisdiction, but his conduct created an unacceptable risk of prejudice.

Sobolevsky's explanation -- that he filed the petitions in the Second Circuit for the convenience of clients who might otherwise have had difficulty timely finding a lawyer in the proper Circuit -- may be true in part, at least with respect to some of the petitions at issue. *See, e.g., Jiang v. Mukasey*, in which the BIA's decision was dated April 8, 2008 and the petition was filed May 5, 2008. However, even assuming that his explanation is true, the Committee finds that his conduct was questionable. In conjunction with his neglect of his briefing responsibilities and his disregard of scheduling, this practice shows a lack of respect for and candor toward the Court.

8

### 4. *Sobolevsky's Credibility and Cooperation with the Committee*

As set out above, Sobolevsky's response contains several statements which do not appear to be consistent with the record, regarding the factual and legal issues presented by his clients' cases, and regarding the circumstances of the petitions improperly filed in the Second Circuit. Moreover, during the pendency of this proceeding he told the Committee and the Court that he intended to move to withdraw in *Yi Yang Pin*, but did not.

The Committee is unable to find by clear and convincing evidence that Sobolevsky's inaccurate statements constitute deliberate attempts to mislead the Court or the Committee. It appears likely that Sobolevsky's misstatements are largely the product of carelessness. At the very least, however, these misstatements raise serious doubts as to whether Sobolevsky has been fully candid and cooperative with these proceedings, and strongly suggest that the misconduct at issue is likely to continue unless a sufficient sanction is imposed. The Committee's recommendation takes these concerns into account.

## VI. Recommendation

Sobolevsky's conduct warrants discipline. The evidence clearly shows a pattern of willful neglect of Sobolevsky's responsibilities to his clients and to the Court. It appears likely that this conduct may continue. The aggravating factors are significant, and mitigation limited.

Under the circumstances, the Committee believes that a period of suspension of at least two years should be imposed. The lifting of that suspension should be conditioned on a showing (to be made either to the Court, or to the Committee) that Sobolevsky is fit to resume the practice of law. This showing should include evidence that Sobolevsky has attended suitable CLE programs in brief-writing and law office management, and that he has not, during the period of his suspension from the Second Circuit, been in default on any other tribunal's scheduling orders, and has not been criticized for the quality of his briefing by any other tribunal. To the extent that he continues to suffer from glaucoma, he should provide a brief statement of how he intends, despite his physical difficulties, to ensure that his clients are adequately represented.

9